RITA W. GRUBER, Judge It Courtyard Gardens Health & Rehabilitation, LLC, and related entities (collectively “Courtyard”) appeal from an order denying their motion to compel arbitration.[1] We affirm. I. Background Courtyard operates a nursing-home facility in Arkadelphia, Arkansas. Ms. Jer-line Kennel, the mother of appellee Annette Williamson, became a resident of the facility in 2005, when it was owned by another company. When Courtyard assumed ownership in 2009, it presented the facility’s residents with an admission agreement and an optional ^arbitration agreement. The arbitration agreement provided, in essence, that any claims related to Courtyard’s provision of services or health care would be resolved exclusively by binding arbitration. It also stated that arbitration would be conducted in accordance with the National Arbitration Forum (“NAF”) Code of Procedure. The admission agreement and arbitration agreement were signed by Ms. Kennel’s son, L.E. Kennel, Jr., pursuant to a power of attorney she had given him in 2005. Thereafter, Ms. Kennel remained at the Courtyard facility until shortly before her death in September 2012. In July 2013, appellee Annette Williamson, who had been appointed personal representative of Ms. Kennel’s estate, sued Courtyard in Clark County Circuit Court. Williamson alleged that Courtyard had committed negligence, medical malpractice, conspiracy, and violations of the Arkansas Residents’ Rights Act, Ark. Code Ann. §§ 20-10-1201 to-1209 (Repl. 2014), while caring for her mother. Courtyard moved to dismiss the complaint and to compel arbitration pursuant to the arbitration agreement signed by L.E. Kennel, Jr., in 2009. Williamson resisted arbitration on three grounds: 1) L.E. lacked the authority to agree to arbitration on his mother’s behalf; 2) enforcement of the arbitration agreement was impossible because the NAF was no longer authorized to conduct arbitration proceedings; and 3) the arbitration agreement was unconscionable. Following a hearing, the circuit court ruled that the arbitration agreement was not unconscionable, and that ruling is not at issue on appeal. The court also made the following rulings, from which this appeal is brought: 1. The Arbitration Agreement was not validly formed. The Arbitration Agreement was signed by L.E. Kennel on Ms. Jerline Kennel’s behalf, pursuant to a 2005 Power |aof Attorney granted to him. On its face and without considering any extrinsic evidence, the 2005 Power of Attorney did not encompass the signing of Arbitration Agreements, and thus Mr. Kennel did not have the authority to enter the Arbitration Agreement on Ms. Kennel’s behalf. Accordingly, no valid arbitration agreement was formed, and the Court denies the Defendants’ Motion to Compel Arbitration. 2. In the alternative, the Arbitration Agreement is unenforceable because it incorporates the National Arbitration Forum (“NAF”) Code of Procedure. The selection of the NAF is an integral term of the Arbitration Agreement, and it is impossible to perform due to the unavailability of the NAF. Courtyard argues that both of the above rulings were in error and that the court should have compelled arbitration of Williamson’s claims. Our standard of review is de novo. LegalZoom.com, Inc. v. McIllwain, 2013 Ark. 370, 429 S.W.3d 261. II. Validity of the Arbitration Agreement Before a court can compel arbitration, it must make a threshold determination that a valid arbitration agreement exists between the parties. Courtyard Gardens Health & Rehab., LLC v. Sheffield, 2016 Ark. 235, 495 S.W.3d 69; Courtyard Gardens Health & Rehab., LLC v. Quarles, 2013 Ark. 228, 428 S.W.3d 437. Arbitration is a matter of contract, and the elements of a contract, including mutual agreement, must be met. GGNSC Holdings, LLC v. Lamb, 2016 Ark. 101, 487 S.W.3d 348; Quarles, supra. When a third party signs an arbitration agreement on behalf oí another, as was done in this case, the court must determine whether the third party was clothed with the authority to bind the other person to arbitration. See Sheffield, supra; Lamb, supra; Quarles, supra. In the present case, the determination of whether L.E. Kennel, Jr., had the authority to agree to arbitration on his mother’s behalf requires the interpretation of the power-of-attorney document through which he acted. The document is a pre-printed form that contains a list of fifteen distinct categories, designated (A) through (O), over which the 14principal may grant authority to her agent. The categories include such matters as real estate, banking, insurance, medical procedures, and — in particular for our purposes— claims and litigation, which is designated category (H). The form states that the principal should select a category by placing her initials in a blank space that corresponds to the category. Specifically, the instructions provide: NOTICE: The Principal must write his or her initials in the corresponding blank space of a box below with respect to each of the subdivisions (A) through (O) below for which the Principal wants to give the agent authority. If the blank space within a box for any particular subdivision is NOT initialed, NO AUTHORITY WILL BE GRANTED for matters that are included in that subdivision. Cross out each power withheld. Ms. Kennel filled out this power-of-attorney form in 2005 with the assistance of Registered Nurse Angela Marlar, who is now the Administrator of Courtyard. The form contains Ms. Kennel’s initials along with those of Nurse Marlar beside the first four categories, (A) through (D), which generally deal with property, investment, and banking transactions. Thereafter, no initials appear next to any remaining categories. However, a wavy, vertical line runs next to categories (E) through (H), and apparently Ms. Kennel’s full signature appears vertically alongside the final categories (I) through (O). Courtyard argues that this document either unequivocally gave L.E. Kennel, Jr., the power to agree to arbitration on his mother’s behalf or could be interpreted as doing so with the aid of extrinsic evidence. The circuit court ruled, however, without resort to extrinsic evidence, that the power-of-attorney document, on its face, did not encompass the signing of arbitration agreements. We agree with the circuit court’s decision. The nature and extent of the agent’s authority must be ascertained from the power-of-attorney instrument itself. See Vogelgesang v. U.S. Bank, 92 Ark. App. 116, 211 S.W.3d 575 (2005). If the instrument is unambiguous, its construction is a matter of law for the court to determine. Id. A contract is unambiguous if its terms are not susceptible to more than one equally reasonable construction. Id. However, if the written terms are ambiguous, extrinsic evidence may be needed to establish the intent of the parties, and the meaning of the contract then becomes a question of fact. See id. Courtyard argues that the power-of-attorney document in this case, which admittedly contains certain inconsistencies, should be viewed as a whole to determine the existence of an ambiguity. However, the document is drafted in a way that allows the principal to pick and choose from among several distinct powers to confer upon her agent. As such, we may narrow our focus to whether Ms. Kennel chose the particular category that would have allowed her son to agree on arbitration as the method for resolving her disputes with Courtyard. As evidenced by the document itself, Ms. Kennel selected categories (A) through (D) using the prescribed manner of placing her initials adjacent thereto. However, there is no dispute that her initials do not appear beside category (H) Claims and Litigation, which alone among the listed categories encompasses the power to agree to arbitration.[2] Instead, the only mark that appears next to category (H) is the tail-end of a wavy line. Whatever meaning this line may have, it is not reasonably susceptible to being interpreted as a stand-in for the principal’s initials. | fiThe instructions in the document are clear. The principal “must” write her initials in the corresponding blank space with respect to each of the subdivisions (A) through (0) for which she wants to give the agent authority; and if the blank space within a box for any particular subdivision “is NOT initialed, NO AUTHORITY WILL BE GRANTED for matters that are included in that subdivision.” It is, therefore, the placement of the principal’s initials next to a category that triggers the grant of authority with regard to that category. Regardless of what mark Ms. Kennel placed beside category (H), it is clear that she did not place her initials there. Consequently, Ms. Kennel did not confer on L.E. Kennel, Jr., the authority to agree to arbitration on her behalf. We therefore affirm the circuit court’s refusal to compel arbitration. III. Impossibility of Performance Because we have affirmed the circuit court’s decision on the above ground, we need not reach Courtyard’s argument that the court erred in ruling that the arbitration agreement was impossible to perform due to the unavailability of the NAF. However, we note that this issue is addressed in a separate case handed down today. See Courtyard Gardens Health & Rehab., LLC v. Davis, 2016 Ark. App. 608, 507 S.W.3d 559. Affirmed. Glover, Whiteaker, Vaught, and Hoofman, JJ., agree. Harrison, J., dissenting in part; concurring in part. . An order denying a motion to compel arbitration is an appealable order. Ark. R. App. P.-Civ. 2(a)(12) (2016). . We note that our power-of-attorney statutes place arbitration or alternate dispute resolution within the category of claims and litigation. See Ark. Code Ann. § 28-68-212(5) (Repl. 2012) (currently in effect); Ark. Code Ann. § 28-68-412(5) (Repl. 2004) (in effect when Ms. Kennel's power of attorney was signed).