Cite as 2021 Ark. App. 353

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-20-483

| | |
|---|---|
| PROGRESSIVE ELDERCARE SERVICES-DREW, INC., D/B/A BELLE VIEW REHABILITATION AND CARE CENTER; PROGRESSIVE ELDERCARE SERVICES, INC.; ADVANCED PRACTICE SOLUTIONS, LLC; PROCARE THERAPY SERVICES, LLC; SOUTHERN ADMINISTRATIVE SERVICES, LLC; PONTHIE HOLDINGS, LLC; PROFESSIONAL NURSING SOLUTIONS, LLC; CAREPLUS STAFFING SERVICES, LLC; ROSS PONTHIE; JOHN PONTHIE; AND MARLENE HENSLEY, IN HER CAPACITY AS ADMINISTRATOR OF BELLE VIEW ESTATES REHABILITATION AND CARE CENTER<br>APPELLANTS<br><br>V.<br><br>ANGELA EVERETT, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF LAVARN TURNER, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF LAVARN TURNER<br>APPELLEE | **Opinion Delivered** September 22, 2021<br><br>APPEAL FROM THE DREW COUNTY CIRCUIT COURT<br>[NO. 22CV-19-60]<br><br>HONORABLE ROBERT BYNUM GIBSON, JR., JUDGE<br><br><br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

In this interlocutory appeal, Progressive Eldercare Services-Drew, Inc., d/b/a Belle

View Estates Rehabilitation and Care Center; Progressive Eldercare Services, Inc.; Advanced

Practice Solutions, LLC; Procare Therapy Services, LLC; Southern Administrative Services, LLC; Ponthie Holdings, LLC; Professional Nursing Solutions, LLC; CarePlus Staffing Services, LLC; Ross Ponthie; John Ponthie; and Marlene Hensley, in her capacity as administrator of Belle View Estates Rehabilitation and Care Center (collectively PES) appeal from the order entered by the Drew County Circuit Court denying a motion to compel arbitration of a complaint filed by Angela Everett, as special administrator of the estate of Lavarn Turner, and on behalf of the wrongful-death beneficiaries of Turner, along with an order denying PES's motion for reconsideration. For reversal, PES argues that the circuit court erred in refusing to enforce the arbitration agreement on the basis that Everett lacked authority to sign it on behalf of Turner. We affirm.

On March 23, 2012, Turner signed a power of attorney (POA) appointing his daughter, Everett, as his agent. The POA provides:

> Lavarn Turner, the "principal," of 366 East College St., Monticello, AR 71655, herewith appoints Angela Denise Everett of . . . Monticello, AR 71655, as his attorney in fact, to act in the place and stead and with the same authority as Principal would have to do in the following acts:
>
> To conduct any and all business regarding my deposit accounts, loans, safe deposit box, or other banking business in regard to the Commercia[l] Bank of Monticello, AR. This power shall specifically include, but is not limited to the right to deposit, withdraw, sign checks or drafts, make stop payment orders, and to conduct any banking transactions necessary or possible in regard to my banking relationship with the Commercia[l] Bank.
>
> To execute a deed or other instrument of conveyance conveying my interest in the following real property:
>
> 366 East College St.
> Monticello, AR 71655
>
> . . . .

2

To act for me in the regard to the following:

In all matters that the Principal would normally represent himself in. This includes all other personal possessions listed in principal name.

On February 21, 2013, Turner became a resident of PES in Monticello. On that date, Everett signed an admission agreement and an arbitration agreement as Turner's "Resident's Representative" and "Legal Representative," respectively. The arbitration agreement required that any disputes between the parties be resolved by binding arbitration. Turner lived at the nursing home until May 29, 2017. He passed away on May 31, 2017.

On April 26, 2019, Everett filed a lawsuit on behalf of Turner's estate and his wrongful-death beneficiaries. She asserted claims against PES of negligence, medical malpractice, breach of the admissions agreement, and violations of the Deceptive Trade Practices Act.

On February 18, 2020, PES moved to compel arbitration pursuant to the arbitration agreement signed by Everett in 2013. PES argued that the POA gave Everett the power to act for Turner "in all matters that the Principal would normally represent himself in," which would include signing the arbitration agreement on Turner's behalf. Everett resisted the motion arguing that the POA was not a general grant of authority; rather, the POA only granted her the authority to manage Turner's banking, real property, and personal property.

On April 24, the circuit court entered an order denying PES's motion to compel arbitration. The court found that the arbitration agreement was invalid because Everett did not have the authority to sign it for Turner, stating that it was "self-evident" that the language in the POA was not a general grant of authority of all matters.

3

On May 8, PES moved for reconsideration. PES argued, among other things, that under the Uniform Power of Attorney Act, Arkansas Code Annotated section 28-68-201(c) (Supp. 2021), Everett was granted general authority to act "in all matters that the Principal would normally represent himself in," which included signing the arbitration agreement.

On May 12, PES filed a notice of appeal of the circuit court's April 24 order. On May 27, the circuit court entered a supplemental order denying PES's motion for reconsideration. The circuit court found that a general grant of authority to an agent in a power of attorney normally appears at the beginning of the document. In contrast, Turner's POA begins with specific grants of authority to act on Turner's behalf at a particular bank and with respect to particular real estate. The court found that the language on which PES relies is found at the end of the document and that the language is followed by additional language about Turner's personal possessions. The court stated:

> Frankly, many inferences may be drawn from this power of attorney. The language in this power of attorney, taken as a whole, is problematic and equivocal. . . . [T]his Court requires a more clearly worded and unequivocally stated document [] before it can find that [PES has] met [its] burden of proof. Instead, the Court finds that this power of attorney is randomly worded hodge podge of phrases [] thrown together in no particular order.

> [PES's] motion for reconsideration is denied [] because [PES] failed to prove by a preponderance of the evidence that the power of attorney, taken as a whole[,] was a general grant of authority to Everett to act for Turner in all areas.

On May 28, PES filed an amended notice of appeal from the April 24 and May 27 orders. This appeal followed.

An order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2021). *Robinson Nursing & Rehab. Ctr.,*

*LLC v. Phillips*, 2019 Ark. 305, at 4, 586 S.W.3d 624, 628. We review a circuit court's denial of a motion to compel arbitration de novo on the record. *Id.*, 586 S.W.3d at 628–29.

The parties do not dispute that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, governs the arbitration agreement at issue. The FAA establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution. *Phillips*, 2019 Ark. 305, at 4, 586 S.W.3d at 629. Likewise, in Arkansas, arbitration is strongly favored as a matter of public policy and is looked upon with approval as a less expensive and more expeditious means of settling litigation and relieving docket congestion. *Id.*, 586 S.W.3d at 629.

Despite an arbitration provision being subject to the FAA, we look to state contract law to decide whether the parties' agreement to arbitrate is valid. *Id.* at 5, 586 S.W.3d at 629. Arbitration is a matter of contract, and the elements of a contract, including mutual agreement, must be met. *Courtyard Gardens Health v. Williamson*, 2016 Ark. App. 606, at 3, 509 S.W.3d 685, 688. When a third party signs an arbitration agreement on behalf of another, as was done in this case, the court must determine whether the third party was clothed with the authority to bind the other person to arbitration. *Id.*, 509 S.W.3d at 688.

To determine whether Everett had authority under the POA to sign the arbitration agreement on behalf of Turner, we look to the Arkansas Uniform Power of Attorney Act. Section 28-68-201 provides:

> Subject to subsections (a), (b), (d), and (e), if a power of attorney grants to an agent authority to do all acts that a principal could do, the agent has the general authority described in §§ 28-68-204–28-68-216.[1]

---

[1]The general authority described in sections 28-68-204 to -216 (Repl. 2012) includes -204 (real property), -205 (tangible personal property), -206 (stocks and bonds), -207

Ark. Code Ann. § 28-68-201(c) (Supp. 2021).

Section 28-68-202 provides that an agent has the authority described in sections 28-68-204 through 28-68-217 if the power of attorney refers to general authority with respect to the descriptive term for the subjects stated or cites the section in which the authority is described. Ark. Code Ann. § 28-68-202(a) (Repl. 2012).

On appeal, PES argues that pursuant to section 28-68-201(c), Turner's POA was a general grant of authority to Everett and therefore encompassed all of the matters in sections 28-68-204 through -216, which includes the authority to engage in arbitration as set forth in section 28-68-212(5). In support of this argument, PES relies on the language in the POA that states Everett has authority to act for Turner "[i]n all matters that the Principal would normally represent himself in." PES acknowledges that there is a sentence that immediately follows the "in all matters" sentence that states: "This includes all other personal possessions listed in principal name." But PES contends that the "in all matters" general grant of authority is not qualified by the "personal possessions" sentence and that the "personal possessions" sentence does not mean that all other subject matters are excluded.

In response, Everett argues that the language of Turner's POA only authorized her to act on her father's behalf with respect to banking, real-property, and personal-property matters

---

(commodities and options), -208 (banks and other financial institutions), -209 (operation of entity or business), -210 (insurance and annuities), -211 (estates, trusts, and other beneficial interests), -212 (claims and litigation—which authorizes the agent to submit to alternative dispute resolution), -213 (personal and family maintenance), -214 (benefits from governmental programs or civil or military service), -215 (retirement plans), and -216 (taxes).

6

as set forth in section 28-68-202(a). She argues that the POA was not a general grant of authority that would include binding her father to arbitration.

The nature and extent of the agent's authority must be ascertained from the power-of-attorney instrument itself. *Williamson*, 2016 Ark. App. 606, at 4, 509 S.W.3d at 688. If the instrument is unambiguous, its construction is a matter of law for the court to determine. *Id.* at 5, 509 S.W.3d at 689. A contract is unambiguous if its terms are not susceptible to more than one equally reasonable construction. *Id.*, 509 S.W.3d at 689. However, if the written terms are ambiguous, extrinsic evidence may be needed to establish the intent of the parties, and the meaning of the contract then becomes a question of fact. *Id.*, 509 S.W.3d at 689. Finally, "The whole of [the power of attorney] is to be taken together so as to give effect to every part, and each clause should be used to interpret the others." 3 Am. Jur. 2d *Agency* § 27 (2002).

While there are no cases with facts closely analogous to the facts in the case at bar, there are two cases that provide some guidance. In *Malvern Operations, LLC v. Moss*, 2020 Ark. App. 355, at 2, 605 S.W.3d 291, 293, a nursing-home resident signed a document that stated, "I wish for [my agent] to have financial & healthcare power of attorney." The nursing home moved to compel arbitration, arguing that the power of attorney granted the agent the authority to sign the arbitration agreement on behalf of the resident. The circuit court denied the motion to compel, and this court affirmed, holding that the power of attorney did not grant authority to the resident's agent to do all acts that a principal could do under section 28-68-201(c) but instead referred to two general subjects with no further explanation. *Id.* at 5, 605 S.W.3d at 295.

In *Williamson*, a nursing-home resident filled out a statutory form power-of-attorney document, which listed multiple categories for the principal to choose what authority to grant the agent. 2016 Ark. App. 606, at 3–4, 509 S.W.3d at 688. Some of the categories were initialed by the resident, and others were not. This court held that because the resident did not select the category on the power of attorney for claims and litigation, which encompasses the power to agree to arbitration, she did not grant authority to her agent to sign the arbitration agreement. *Id.* at 5–6, 509 S.W.3d at 689.

In both *Moss* and *Williamson*, the powers of attorney failed to grant authority to the residents' agents to do all acts that the principals could do under section 28-68-201(c). Instead, the powers of attorney gave specific grants of authority as authorized by section 28-68-202(a) but failed to include claims and litigation (arbitration) in the specific grants. Likewise, the language in Turner's POA does not unambiguously give Everett a general grant of authority as described in section 28-68-201(c) sufficient for Everett to bind Turner to arbitration. Taking the whole of the POA together and giving effect to every part of it, the POA can more easily be interpreted to support Everett's position that she was merely granted authority on three matters that do not include arbitration.

For example, the language on which PES relies is found at the end of the POA and is immediately followed by a sentence that refers to Turner's personal possessions, which can be interpreted as Turner giving his daughter full authority to handle his personal possessions only. If Turner had intended to give Everett a general grant of authority pursuant to section 28-68-201(c), then there would have been no need to also give specific authority to Everett with

8

respect to the banking and real-property matters or to include the personal-possessions language.

Also, the POA begins with an introductory paragraph that states that Everett is appointed "to act in the place and stead and with the same authority as Principal to do in the following acts." This language indicates that a list of specific grants of authority is to follow, which appears restrictive in nature, and the POA is followed with a list of three specific grants of authority. The first two specific grants give Everett authority to act with regard to his banking and real estate, and the language on which PES relies is found within the third specific grant of authority related to personal possessions. These three specific grants of authority are consistent with the creation of a power of attorney pursuant to section 28-68-202(a). However, because Turner's POA does not include a specific grant of authority to Everett that has anything to do with or that is related to arbitration, we hold that the POA did not authorize Everett to sign the arbitration agreement on Turner's behalf.

In sum, we agree with the circuit court that the POA language is "problematic and equivocal" and that a more clearly worded and unequivocally stated power of attorney is required. Because Turner's POA can reasonably be interpreted to have granted Everett authority to handle only three specific matters on behalf of Turner (banking, real property, and personal possessions) and not arbitration, Everett did not have authority to bind Turner to the arbitration agreement. Accordingly, we hold that PES failed to meet its burden of proving that Everett was given a general grant of authority in Turner's POA, Everett lacked

9

the authority to bind Turner to the arbitration agreement, and there is no valid arbitration agreement to enforce. We affirm the circuit court's denial of the motion to compel arbitration.

Affirmed.

GRUBER and WHITEAKER, JJ., agree.

*Kutak Rock LLP*, by: *Mark W. Dossett* and *Samantha Blassingame*, for appellants.

*Reddick Moss, PLLC*, by: *Matthew D. Swindle* and *Heather G. Zachary*, for appellees.