Cite as 2021 Ark. App. 403

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-20-584

| | |
|---|---|
| INNISFREE HEALTH AND REHAB, LLC; CENTRAL ARKANSAS NURSING CENTERS, INC.; NURSING CONSULTANTS, INC., D/B/A PROFESSIONAL NURSING AND REHABILITATION SERVICES; INNISFREE ESTATES, LLC; AND MICHAEL S. MORTON<br><br>APPELLANTS<br><br>V.<br><br><br>VICKI TITUS, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF HELEN GALE GILMORE, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF HELEN GALE GILMORE<br><br>APPELLEE | **Opinion Delivered** October 20, 2021<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-19-3033]<br><br>HONORABLE JOHN R. SCOTT, JUDGE<br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

This is an interlocutory appeal concerning the denial of a motion to compel arbitration.[1]  The appellants are Innisfree Health and Rehab, LLC; Central Arkansas Nursing Centers, Inc.; Nursing Consultants, Inc., d/b/a Professional Nursing and Rehabilitation Services; Innisfree Estates, LLC; and Michael Morton.  The appellee is Vicki Titus, as special

---

[1]Our jurisdiction to hear the appeal is pursuant to Rule 12(a)(2) of the Arkansas Rules of Appellate Procedure–Civil and Ark. Code Ann. § 16-108-228(a)(1) (Repl. 2016), whereby an interlocutory appeal from an order denying a motion to compel arbitration is permitted.

administrator of the estate of Helen Gale Gilmore, deceased, and on behalf of the wrongful death beneficiaries of Helen Gale Gilmore. For the following reasons, we affirm the trial court's order denying appellants' motion to compel arbitration.

Helen Gale Gilmore was admitted to Innisfree Health and Rehab, LLC (Innisfree), on April 11, 2018. In connection with her admission, Helen's husband, Matthew Gilmore, signed multiple documents. Included among those documents was an arbitration agreement, which was part of the admission agreement. Signing the arbitration agreement was a condition of admission, and it provided that any claims, disputes, or controversies arising out of the admission agreement or any service or health care provided by the facility shall be resolved exclusively by binding arbitration. Helen was a resident of Innisfree through June 10, 2018, and she later died in hospice care on August 5, 2018.

On December 13, 2019, Vicki Titus, as special administrator of Helen's estate, filed a lawsuit against appellants asserting claims of negligence and medical negligence for the injuries to, and wrongful death of, Helen. The complaint alleged that as a result of appellants' negligence during Helen's residency at Innisfree, Helen sustained numerous injuries including respiratory distress and anoxic brain injury, which lead to Helen's untimely death.

On January 15, 2020, appellants filed an answer wherein they denied the allegations in the complaint and stated that the dispute was governed by the arbitration agreement. On January 31, 2020, appellants filed a motion to compel arbitration as to all claims and to stay proceedings. In their motion, appellants contended that the arbitration agreement signed by Helen's husband, Matthew Gilmore, was signed pursuant to a durable power of attorney

and that it bound Helen and her estate to the agreement. Appellants attached to their motion the admission agreement that contained the arbitration agreement, as well as a power of attorney executed by Helen in favor of husband Matthew.

The admission agreement identifies Helen as the "Resident," and Matthew as the Resident's "Responsible Party." The agreement provides that the Resident's Responsible Party "is the Resident's legal guardian, if one has been appointed, the Resident's attorney-in-fact, if the Resident has executed a power of attorney, or some other individual or family member who agrees to assist the facility in providing for the Resident's health, care, and maintenance." The arbitration agreement is denominated "Section 6" of the admission agreement. The arbitration agreement identifies Matthew as the Resident's Responsible Party, but the line that identifies the Resident is left empty. The arbitration agreement is signed by Matthew as the Resident's "Spouse." The agreement contains a space to mark—indicating to be checked if applicable—if the Responsible Party provided the facility with a copy of a power of attorney, guardianship papers, or other legal documents. That designated space is left blank.

Helen executed the power of attorney in favor of husband Matthew on November 15, 2017, which was seven months prior to Helen's admission to Innisfree. The power of attorney appointed Matthew "as my agent, or attorney in fact, to make decisions regarding my health care during periods when my health care provider has determined that I lack capacity to decide for myself." Among other things, the power of attorney provided authorization "to admit me to hospitals, including . . . nursing homes . . . and to sign all appropriate forms, consents, and releases in connection with any of said matters."

3

On February 14, 2020, Vicki Titus, as special administrator of Helen's estate, filed a response to appellants' motion to compel arbitration. In the response, Titus asserted that no legal authority for Matthew's signature was noted on the arbitration agreement and that Matthew had signed only as Helen's "Spouse." Titus also argued that Matthew's power of attorney was ineffective because there was no evidence that Helen lacked sufficient mental capacity to decide for herself when she was admitted to Innisfree. Finally, Titus argued in the alternative that even had the power of attorney been effective, the scope of the power of attorney did not include the authority to bind Helen to arbitration.

On February 24, 2020, appellants filed a reply to Titus's response wherein they alleged that Helen lacked capacity when she was admitted to Innisfree and that the terms of the power of attorney authorized husband Matthew to consent to arbitration on Helen's behalf. The appellants attached the affidavit of Melissa Huckaby, Innisfree's social-services director who had signed the arbitration agreement as Innisfree's representative. Huckaby's affidavit states, "Upon information and belief, at the time of Ms. Gilmore's admission, it was determined that she lacked the capacity to make decisions regarding her admission to Innisfree."

A hearing was held on appellants' motion to compel arbitration on June 2, 2020. At the conclusion of the hearing, the trial court announced that it would deny the motion. On June 12, 2020, the trial court entered an order denying the motion to compel for the following reasons:

1. The Court finds that Matthew Gilmore signed the Arbitration Agreement solely as the "spouse" of Helen Gilmore and, as a spouse, Matthew Gilmore did not have the authority to bind his wife to the Arbitration Agreement and

4

that this ruling is consistent with the decision in the *Hickory Heights* [*Health and Rehab, LLC v. Cook*, 2018 Ark. App. 409, 557 S.W.3d 286] case;

2. The Court finds it material that the box located on the signature page was not checked and, thus, the Defendants did not rely on any documentation or power of attorney, including the durable power of attorney for health care, when Matthew Gilmore signed the Arbitration Agreement; and

3. That the durable medical power of attorney for health care was a springing power of attorney that did not provide Matthew Gilmore the authority to sign the Arbitration Agreement and that Defendants failed to prove that the social worker, whose affidavit was submitted to the Court, was a healthcare worker and that she was capable of making a determination as to whether Helen Gilmore lacked the capacity to make decisions.

Appellants filed their timely notice of appeal on July 8, 2020. The sole issue before our court is whether the trial court erred in denying appellants' motion to compel arbitration.

We review a trial court's order denying a motion to compel arbitration de novo on the record. *Courtyard Gardens Health & Rehab., LLC v. Quarles*, 2013 Ark. 228, 428 S.W.3d 437. Arbitration is simply a matter of contract between parties. *Id.* Whether a dispute should be submitted to arbitration is a matter of contract construction, and we look to the language of the contract that contains the agreement to arbitrate and apply state-law principles. *Id.* The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally; thus, we will seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself. *Id.* The construction and legal effect of an agreement to arbitrate are to be determined by this court as a matter of law. *Id.* We are also guided by the legal principle that contractual agreements are construed against the drafter. *Carter v. Four Seasons Funding Corp.*, 351 Ark. 637, 97 S.W.3d 387 (2003).

Generally, the terms of an arbitration contract do not apply to those who are not parties to the contract. *Bigge Crane & Rigging Co. v. Entergy Ark., Inc.*, 2015 Ark. 58, 457 S.W.3d 265. In Arkansas, the presumption is that parties contract only for themselves; thus, a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties. *Elsner v. Farmers Ins. Group, Inc.*, 364 Ark. 393, 220 S.W.3d 633 (2005).

Appellants argue that there was a valid arbitration agreement between the parties. Appellants contend that husband Matthew's power of attorney was triggered because Innisfree determined that Helen lacked capacity to make her own decisions, and contend further that the power of attorney authorized Matthew to consent to arbitration. Appellants further argue that Matthew signed the arbitration agreement in his capacity as Helen's attorney-in-fact pursuant to the power of attorney. Appellants claim that it is of no consequence that Matthew signed as Helen's "Spouse" or that there was no checkmark in the box signifying that the power of attorney was provided to Innisfree. Appellants note that Matthew signed the arbitration agreement as the "Responsible Party," which, according to the agreement, includes the Resident's "attorney-in-fact, if the resident has executed a power of attorney."[2] Appellants argue that the trial court's order should be reversed and appellees' claims submitted to binding arbitration.

---

[2]We observe that the definition of "Responsible Party" also includes "some other individual or family member who agrees to assist the facility in providing for the Resident's health, care, and maintenance."

6

We conclude that the disposition of this case is controlled by our recent opinion in *Innisfree Health & Rehab, LLC v. Jordan*, 2020 Ark. App. 518. *Innisfree v. Jordan* was a case also involving the appellants herein, and our court upheld the denial of a motion to compel arbitration on similar facts. Given our holding in *Innisfree v. Jordan*, we conclude that it is unnecessary to decide whether Matthew's power of attorney authorized him to bind Helen to arbitration because Matthew did not sign the arbitration agreement in a representative capacity with the legal authority to bind Helen.

In *Innisfree v. Jordan,* the resident, Kenneth Jordan, executed a power of attorney in favor of his wife, Reba Jordan.[3] As in the present case, the arbitration agreement identified Reba as the resident's "Responsible Party," and it was signed by Reba as the resident's "Spouse."[4] Moreover, as in the present case, the agreement in *Innisfree v. Jordan* contained a space—which was left blank—that was to be checked if applicable if the Responsible Party provided the facility with a copy of a power of attorney, guardianship papers, or other legal documents.

The trial court in *Innisfree v. Jordan* found the arbitration agreement unenforceable because Reba signed the arbitration agreement in her capacity as Kenneth's spouse—not his power of attorney (although she held a valid power of attorney)—and that the nursing home

---

[3]Unlike the instant case, there was no dispute in *Innisfree v. Jordan* that Reba held an effective power of attorney when Kenneth was admitted to the facility.

[4]Appellants acknowledge in this appeal that the definition of "Responsible Party" in *Innisfree v. Jordan* was the same as in the case at bar.

did not check the box indicating that a power of attorney had been provided.[5] Our court affirmed the trial court in *Innisfree v. Jordan*, stating that there was no clear indication anywhere in the arbitration agreement to demonstrate whether Reba was signing in an individual capacity or in a representative capacity, and that neither party marked the space indicating that Reba was acting pursuant to any legal authority, such as a guardianship or power of attorney. We wrote:

> When a third party signs an arbitration agreement on behalf of another, as was done in this case, the court must determine whether the third party was clothed with authority to bind the other person to arbitration. *Courtyard Gardens Health & Rehab., LLC v. Williamson*, 2016 Ark. App. 606, 509 S.W.3d 606. Here, Innisfree has the burden of proving an agency relationship. *See Quarles*, 2013 Ark. 228, at 7, 428 S.W.3d at 443. Nowhere does the arbitration agreement indicate that Reba Jordan signed as her husband's power of attorney or that she had any legal authority to bind him. Agency is not presumed, and if there is uncertainty or ambiguity in an agreement, or it is susceptible to more than one reasonable construction, our courts construe it most strongly against the party who drafted it. *Hickory Heights Health & Rehab v. Cook*, 2018 Ark. App. 409, at 10, 557 S.W.3d 286, 292 (citing *Price v. Wilbanks*, 2009 Ark. App. 849, at 6, 374 S.W.3d 28, 32).

> Because we hold that there is an ambiguity in the agreement before us, we construe the contract most strongly against the appellants and affirm the circuit court's conclusion that Reba Jordan did not sign in a representative capacity with the legal authority to bind Mr. Jordan.

*Innisfree v. Jordan*, 2020 Ark. App. 518, at 5–6.

The appellant's brief cites *Innisfree v. Jordan* and "recognize[s] that this court recently issued its opinion in a case involving the same nursing facility and a similar arbitration

---

[5]The trial court in *Innisfree v. Jordan* also found that the arbitration agreement did not identify the resident. In the present case, although Helen was not identified as the resident in the arbitration agreement, the arbitration agreement was part of the admission agreement wherein Helen was identified as the resident. In reaching its decision in the present case, the trial court did not rely on the absence of Helen's name in the arbitration agreement itself, and nor do we.

8

agreement and concluded that the lack of a checkmark was fatal to the validity of the agreement." Appellants, however, note that when they filed their brief (and reply brief) herein, a petition for review was pending in *Innisfree v. Jordan*, which asked the supreme court to vacate the holding. Appellants argue that the holding in *Innisfree v. Jordan* is contrary to the evidence, should be vacated, and should not be applied herein. We observe, however, that after the briefs were filed in the instant case, our supreme court denied review in *Innisfree v. Jordan*, leaving our holding intact.

Appellants also attempt to distinguish this case from *Innisfree v. Jordan* because in that case, the power of attorney was not provided to the facility and was located in court records, whereas the power of attorney in this case was subsequently provided to Innisfree and was attached to its motion to compel arbitration. However, we do not find this distinction dispositive where, in both cases, the space on the arbitration agreement was not marked by either party to indicate that the Responsible Party was acting pursuant to any legal authority, such as a power of attorney. Nor is there any indication in our record that the power of attorney was provided to Innisfree at the time of Helen's admission to the nursing home or when the relevant documents were signed.

Applying our reasoning in *Innisfree v. Jordan* to the present case, we conclude that there is no clear indication in the arbitration agreement to demonstrate whether husband Matthew was signing in an individual capacity or in a representative capacity. The agreement is ambiguous, and the appellants failed in their burden to prove an agency relationship such that Matthew signed in a representative capacity with the legal authority

9

to bind Helen.  Accordingly, we affirm the trial court's order denying appellant's motion to compel arbitration.[6]

Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*Hardin, Jesson & Terry, PLC*, by: *Jeffrey W. Hatfield*, *Kynda Almefty*, *Carol Ricketts*, *Kirkman T. Dougherty*, and *Stephanie I. Randall*, for appellants.

*Rainwater, Holt & Sexton, P.A.*, by: *Jeff R. Priebe*, for appellee.

---

[6]Because we hold the agreement invalid as not being signed by Matthew in his representative capacity, we do not reach the appellants' arguments that Helen lacked the capacity to make her own decisions or that the terms of the power of attorney would authorize Matthew to bind Helen to arbitration.