Cite as 2022 Ark. App. 190

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-21-392

|  |  |
|---|---|
|  | Opinion Delivered April 27, 2022 |
| HICKORY HEIGHTS HEALTH AND REHAB, LLC; CENTRAL ARKANSAS NURSING CENTERS, INC.; HICKORY MANOR, LLC; AND MICHAEL S. MORTON | |
|  | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION [NO. 60CV-20-2846] |
| APPELLANTS | |
| V. | |
| WESLEY SMITH, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF BETTYE JEAN SMITH, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF BETTYE JEAN SMITH | HONORABLE PATRICIA JAMES, JUDGE |
| APPELLEE | |
|  | AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellants Hickory Heights Health and Rehab, LLC; Central Arkansas Nursing Centers, Inc.; Hickory Manor, LLC; and Michael S. Morton bring this interlocutory appeal of an order of the Pulaski County Circuit Court denying their motion to compel arbitration of a negligence complaint filed by appellee Wesley Smith as special administrator of the

estate of Bettye Jean Smith. Appellants argue that the circuit court erred in failing to enforce a valid arbitration agreement. We find no error and affirm.

On February 19, 2018, Wesley assisted with Bettye's admission to Hickory Heights Health and Rehab, LLC (Hickory Heights), for medical, nursing, and personal care.[1] The facility required signatures on necessary documents. Wesley signed the admission form for his mother as the responsible party.[2] However, Bettye's name was not anywhere on the admission agreement. That same day, Wesley also signed an arbitration agreement that was required as a condition of Bettye's admission to the facility. Wesley signed the arbitration agreement as the responsible party and indicated that his relationship to Bettye was "son." Bettye's name was printed on the resident line in the arbitration agreement in what appeared to be the handwriting of the facility's representative. A separate line below the signatures read as follows: "_____ (Check if applicable): A copy of my guardianship papers, durable power of attorney or other documentation has been provided to the Facility and is attached." The blank was not checked.

---

[1]Wesley had been appointed medical power of attorney (POA) by Bettye in December 2005.

[2]Responsible party was defined in the admission agreement as "the Resident's legal guardian, if one has been appointed, the Resident's attorney-in-fact, if the Resident executed a power of attorney, or some other individual or family member who agrees to assist the Facility in providing for the Resident's health, care and maintenance." The definition also included someone who "manages, uses, controls, or otherwise has legal access to Resident's income or resources that legally may be used to pay Resident's share of cost or other charges not paid by the Arkansans Medicaid Program or any other source."

2

Bettye was a resident at Hickory Heights from February 19, 2018, until October 11, 2019. Bettye died on November 9, 2019. Wesley was appointed special administrator of Bettye's estate on December 31. He filed the negligence complaint against appellants on May 5, 2020. He stated that as result of appellants' negligence, Bettye suffered numerous physical and emotional injuries: falls, medication errors, right scapula fracture, pelvic ring fracture, severe pain and suffering, and death. He contended that Bettye's injuries led to degradation, mental anguish, distress, unnecessary hospitalizations and treatment, and emotional trauma and eventually caused her death. Appellants filed an answer on June 3 asserting the existence of an arbitration agreement and denying the material allegations of Wesley's complaint.

Appellants filed a motion to compel arbitration on August 21. They contended that Wesley executed the arbitration agreement when Bettye was admitted to Hickory Heights, and at the time the agreements were signed, Wesley had authority under a medical POA executed by Bettye on December 28, 2005. Appellants maintained that by signing the agreements, Wesley bound Bettye and her estate to the terms of the arbitration agreement. Appellants attached a copy of the medical POA to their motion to compel arbitration. The authority granted in the medical POA was to "kick in" if it was determined that Bettye was incapacitated to provide informed consent for medical treatment and surgical and diagnostic procedures. The document permitted Wesley to "make health care decisions and to provide, withhold, or withdraw consent on [Bettye's] behalf for medical treatment and surgical and diagnostic procedures, to apply for public benefits to defray the costs of health care, and to

3

authorize [Bettye's] admission to or transfer from a health care facility." Wesley filed a response on September 1 contending that he signed the necessary documents as Bettye's son and not under any legal authority to bind Bettye, who he noted was not identified in the admission agreement. He stated that the line outlining his legal authority was left blank on the arbitration agreement because he did not hold legal authority to bind Bettye to the agreement. Wesley also said that the medical POA executed in his favor did not include the power to waive Bettye's right to a jury trial for personal-injury claims.[3] Appellants filed a reply on September 14, contending that Wesley signed the documents as Bettye's attorney-in-fact and that the lack of a checkmark does not destroy the authority Wesley had. They also argued that Wesley had the authority to consent to the arbitration agreement on Bettye's behalf because the arbitration agreement was in connection with Bettye's admission to Hickory Heights. Wesley filed a supplemental response on September 22, again contending that his authority under the medical POA was limited to health-care decisions and was not adequate to bind Bettye or her estate to arbitration.

The circuit court held a hearing on appellants' motion to compel on March 16, 2021. Appellants maintained that the arbitration agreement was incorporated into the admission agreement, which fell under the authority granted to Wesley in the medical POA. Wesley argued that the medical POA did not give him the authority to bind Bettye to arbitration.

---

[3]Appellants also made other contentions; however, they are not relevant to the issue on appeal.

4

The circuit court did not make an oral ruling but informed the parties that it wished to go over all the evidence and exhibits before deciding.  The circuit court filed an order on April 23 denying appellants' motion to compel arbitration upon a finding that "the power of attorney at issue in this matter did not give [Wesley] the right to bind his Mother to arbitration."  Appellants filed a timely notice of appeal on May 21.

An order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12).[4]  We review a circuit court's denial of a motion to compel arbitration de novo on the record.[5]  While we are not bound by the circuit court's decision, in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept its decision as correct on appeal.[6]

Generally, the terms of an arbitration contract do not apply to those who are not parties to the contract.[7]  In Arkansas, the presumption is that the parties contract only for themselves; thus, a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties.[8]  When a third party signs an arbitration agreement on behalf of another, as was done in this case, the court

---

[4](2021).

[5]*Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, 586 S.W.3d 624.

[6]*Progressive Eldercare Services-Morrilton, Inc. v. Taylor*, 2021 Ark. App. 379.

[7]*Innisfree Health & Rehab, LLC v. Titus*, 2021 Ark. App. 403, 636 S.W.3d 781.

[8]*Id.*

must determine whether the third party was clothed with authority to bind the other person to arbitration.[9]  Here, Hickory Heights bore the burden of proof.[10]

In denying appellants' motion to compel, the circuit court found that the authority granted to Wesley in the medical POA was not sufficient to allow him to bind Bettye to the terms of the arbitration agreement.  We agree.  Appellants argue that since the arbitration agreement was part of the admissions process, Wesley had the authority to bind Bettye to arbitration based on the medical POA's language giving Wesley the right to authorize Bettye's admission into a health-care facility.  This argument is without merit.[11]  The nature of an agent's authority must be ascertained from the power-of-attorney instrument.[12]  Our court has found that a power of attorney that included authority to make health-care decisions did not include the authority to agree to arbitrate.[13]  Here, there is no indication that Wesley had power beyond making health-care decisions for Bettye.  The medical POA did not include the right for Wesley to make litigation decisions for Bettye, nor did it authorize Wesley to sign the arbitration agreement on Bettye's behalf.  Accordingly, we hold that Wesley lacked the authority to bind Bettye to the arbitration agreement, and there is no valid

---

[9]*Innisfree Health & Rehab, LLC v. Jordan*, 2020 Ark. App. 518.

[10]*Pine Hills Health & Rehab., LLC v. Talley*, 2018 Ark. App. 131, 546 S.W.3d 492.
[11]Bettye's name was not found anywhere in the admission agreement.

[12]*Courtyard Gardens Health & Rehab., LLC v. Williamson*, 2016 Ark. App. 606, 509 S.W.3d 685.

[13]*Id.*

6

arbitration agreement to enforce.  We affirm the circuit court's denial of appellants' motion to compel arbitration.

Affirmed.

BARRETT and VAUGHT, JJ., agree.

*Hardin, Jesson & Terry, PLC*, by: *Jeffrey W. Hatfield, Kynda Almefty, Carol Ricketts, Kirkman T. Dougherty*, and *Stephanie I. Randall*, for appellants.

*Rainwater, Holt & Sexton, P.A.*, by: *Jeff R. Priebe*; and *Appellate Solutions, PLLC*, by: *Deborah Truby Riordan*, for appellee.